NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MARVIN BRODY, et al., *Plaintiffs/Appellants*,

*v.*

POLSINELLI, P.C., *Defendant/Appellee*.

No. 1 CA-CV 18-0325
FILED 3-26-2019

Appeal from the Superior Court in Maricopa County
No. CV2015-009296
The Honorable Karen A. Mullins, Judge

**AFFIRMED**

COUNSEL

Dow Law Office, Phoenix
By David W. Dow
*Co-counsel for Plaintiffs/Appellants*

Marvin Brody Attorney at Law, Woodbine, Maryland
By Marvin Brody
*Co-counsel for Plaintiffs/Appellants*

Lewis Roca Rothgerber Christie LLC, Phoenix
By Dale A. Danneman, Jon D. Weiss
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Kenton D. Jones joined.

---

**C R U Z**, Judge:

¶1          Marvin and Nancy Brody appeal the denial of their Request for Rule 56(d) Relief and the entry of two partial summary judgments dismissing their legal malpractice claim against Polsinelli, P.C. ("Polsinelli").  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          Brody filed this lawsuit alleging that Polsinelli, a law firm, mishandled litigation in bankruptcy court relating to Brody's Chapter 11 reorganization plan and mishandled litigation in superior court relating to property owned by Brody Family Investments Limited Partnership.

I.      Bankruptcy Matter

¶3          Marvin Brody retained Polsinelli to file a Chapter 11 petition in the Bankruptcy Court for the District of Arizona.  Brody filed for bankruptcy to prevent the foreclosure of a multimillion-dollar mansion he was renovating, funded by a loan from Geared Equity ("Geared").  During the bankruptcy proceedings, Brody continued to market the mansion and eventually found a buyer.  Brody then asked the bankruptcy court to approve his bankruptcy reorganization plan, which called for Brody to pay Geared the contract interest, as opposed to the higher interest rate triggered by the default.  This reorganization plan was based on a Ninth Circuit opinion, which held that cure of a default in a bankruptcy reorganization plan relieved the debtor from paying default interest.  *In re Entz-White Lumber & Supply, Inc.*, 850 F.2d 1338, 1341-42 (9th Cir. 1988).  Application of *Entz-White* and approval of the proposed plan would have reduced Brody's interest obligation by approximately $200,000.

¶4          The bankruptcy court rejected Brody's reorganization plan and Brody instructed Polsinelli to appeal.  On appeal, the district court found that *Entz-White* applied, reversed the bankruptcy court and held Brody was not responsible for default interest.  Both parties sought attorneys' fees in bankruptcy court.  The parties settled soon thereafter;

Brody paid Geared $150,000 for its attorneys' fees, while $200,000 being held in escrow for payment of default interest and the balance of all fee deposits was released back to Brody.

## II.     Superior Court Matter

¶5          Brody had a business relationship with Scott Jung and his business entities (collectively "Jung"); those entities jointly purchased, renovated and sold luxury homes.  In 2009, Jung purchased a property in Scottsdale (the "Clinton Property").  Brody's daughter, Heather Brody, occupied the Clinton Property during this time.  In 2013, as part of a separate lawsuit filed on behalf of a Brody business entity against Jung, a *lis pendens* was recorded on the Clinton Property; the lawsuit was voluntarily dismissed.

¶6          In April 2014, Jung faced foreclosure of the Clinton Property and initiated eviction proceedings against Heather Brody.  In May 2014, Polsinelli filed a lawsuit on behalf of Brody Family Investments Limited Partnership ("BFILP") against Jung, alleging BFILP held an equitable interest in the Clinton Property.  BFILP also sought and obtained a temporary restraining order ("TRO") enjoining Jung from selling the Clinton Property without the superior court's permission.  Later that month, the justice court handling eviction proceedings ordered Heather Brody to vacate the Clinton Property by the end of the month and she complied.  On July 8, 2014, the *lis pendens* from the first lawsuit was released.  On July 16, 2014, Jung sold the Clinton Property without the court's permission, violating the TRO.  Appellants alleged that at the time they filed the lawsuit against Jung, Appellants asked Polsinelli to file a new *lis pendens*; however, Polsinelli did not file a second lien before Jung sold the Clinton Property.

## III.     Malpractice Lawsuit

¶7          Brody brought a legal malpractice action against Polsinelli, alleging Polsinelli was liable for negligence, breach of fiduciary duty, and negligent supervision.  Included in those allegations was the contention that at the time they authorized Polsinelli to file the lawsuit against Jung they also directed that Polsinelli file a new *lis pendens* against the subject property, and that Polsinelli's failure to do so was a departure from the applicable standard of care, and harmful to Brody's economic interests.  In that regard, Brody certified in the complaint that expert testimony was necessary to prove the licensed professional's standard of care or liability for the claim.  *See* Ariz. Rev. Stat. ("A.R.S.") § 12-2602(A).  In October of

2015, Plaintiffs identified their expert witness, David Vandeventer, and timely provided his Preliminary Expert Affidavit.

**¶8**        In September of 2017, after the close of discovery, Polsinelli moved for partial summary judgment in the bankruptcy matter and partial summary judgment in the superior court matter, arguing, in part, that Brody could not prove his claims because there was, as a matter of law, insufficient expert testimony regarding the element of causation.   In response, Brody filed the expert's "Supplemental Affidavit."   After the motions for summary judgment were fully briefed, Brody filed a "Request for Rule 56(d) Relief" seeking leave to utilize the newly-filed expert's Supplemental Affidavit.  The superior court denied the Arizona Rule of Civil Procedure ("Rule") 56(d) request as both untimely and lacking merit.

**¶9**        The superior court granted both motions for partial summary judgment.  After Brody's motion for reconsideration was denied, the court entered final judgment dismissing Brody's claims with prejudice.  Brody timely appealed.  We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶10**        Brody raises three issues on appeal.  He argues that: (1) the superior court abused its discretion by denying his Request for Rule 56(d) Relief; (2) the superior court erred by granting summary judgment in the bankruptcy matter; and (3) the superior court erred by granting summary judgment in the superior court matter.  For the following reasons, we affirm.

I.      Request for Rule 56(d) Relief

**¶11**        Brody argues the superior court abused its discretion by denying his request for relief under Rule 56(d).  We disagree.

**¶12**        We review the superior court's orders regarding expert testimony and its denial of relief pursuant to Rule 56(d) for an abuse of discretion.  *St. George v. Plimpton*, 241 Ariz. 163 (App. 2016) (citations omitted); *Miller v. Kelly*, 212 Ariz. 283, 285, ¶ 4 (App. 2006) ("discovery issues are left to the discretion of trial courts.").

**¶13**        To obtain relief in this setting under Rule 56(d), the moving party must present an affidavit informing the court of: (1) the subject evidence was unavailable or otherwise beyond the party's control; (2) the location of the evidence; (3) what the party believes the evidence will reveal; (4) the methods to be used to obtain it; and (5) an estimate of the amount of

time the additional discovery will require. *Lewis v. Oliver*, 178 Ariz. 330, 338 (App. 1993).

**¶14** Pursuant to Rule 56(d), a party may seek relief to stay or supplement summary judgment proceedings to conduct additional discovery or to permit untimely disclosed opinions. A court may defer considering a summary judgment motion and "allow time to obtain affidavits or to take discovery before a response to the motion is required." Ariz. R. Civ. P. 56(d)(5)(A). The major objective of the rule is to ensure that a diligent party is given a reasonable opportunity to prepare his case. *Hunter Contracting Co. v. Superior Court*, 190 Ariz. 318, 322 (App. 1997) (citation and quotation omitted). Moreover, the rule enables the trial court to assure that each party has had an opportunity to ascertain the true facts. *Bobo v. John W. Lattimore, Contractor*, 12 Ariz. App. 137, 141 (1970). Brody's motion did not, however, meet Rule 56(d) requirements.

**¶15** Brody's Rule 56(d) request was untimely because it was filed over a week after the motions for partial summary judgment were fully briefed. Additionally, Brody's request was not supported by a good faith consultation certificate in compliance with Rule 56(d)(1)(B) and Rule 7.1(h). The request was also not supported by an "affidavit establishing specific and adequate grounds for the request." Ariz. R. Civ. P. 56(d)(1)(A).

**¶16** In the request, Brody argued Polsinelli challenged their expert's opinions for the first time in its motions for partial summary judgment, and therefore Brody should be allowed to present new expert opinions. However, Brody failed to show that the Supplemental Affidavit constituted newly discovered material or that Brody could not have with reasonable diligence timely discovered and disclosed these opinions. *See Phil W. Morris Co. v. Schwartz*, 138 Ariz. 90, 94 (App. 1983). Moreover, Brody did not seek additional discovery before responding to Polsinelli's motions. Consequently, because his request was untimely and did not on its face comply with Rule 56, the superior court did not err by denying Brody's discovery motion.

**¶17** Brody's reliance on *Rasor v. Northwest Hospital, LLC*, 243 Ariz. 160 (2017) is misplaced. In *Rasor,* the court held that, under the facts of that case, the plaintiff can file a Rule 56(d) request for additional time to secure a new expert if their expert's qualifications are challenged. *Id.* at 165, ¶ 25. Here, Polsinelli's summary judgment motions were based on Brody's failure to timely disclose expert opinions on causation; the subject motions did not challenge the expert's qualifications. Moreover, relying on *Rasor* does not satisfy Brody's burden to show compliance with the requirements

of Rule 56(d). For these reasons, the superior court did not err in denying the Rule 56(d) relief.

## II.      Summary Judgment

**¶18**      We review a ruling granting summary judgment *de novo*. *Parkway Bank & Trust Co. v. Zivkovic*, 232 Ariz. 286, 289, ¶ 10 (App. 2013). The motion should be granted "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990). We independently determine whether there are any genuine issues of material fact and if the superior court properly applied the law. *Parkway*, 232 Ariz. at 289, ¶ 10. Moreover, we can affirm summary judgment on any basis in the record, even if not relied on by the superior court. *Mutschler v. City of Phoenix*, 212 Ariz. 160, 162, ¶ 8 (App. 2006).

### A.      Bankruptcy Matter

**¶19**      Brody argues that the superior court erred in granting Polsinelli's motion for partial summary judgment in the bankruptcy matter. We disagree. Because the superior court correctly denied Appellants' Rule 56(d) request, we only consider the Preliminary Expert Affidavit.

**¶20**      Because the crux of Brody's complaint is a claim for legal malpractice, to prevail, he must prove (1) the existence of an attorney-client relationship that imposes a duty on the attorney to exercise that degree of skill, care, and knowledge commonly exercised by members of the profession; (2) the breach of a duty; (3) the defendant's negligence was the actual and proximate cause of the injury; and (4) the nature and extent of damages. *See Glaze v. Larsen*, 207 Ariz. 26, 29, ¶12 (2004) (citing *Phillips v. Clancy*, 152 Ariz. 415, 418 (App. 1986)). Each of Brody's claims of legal malpractice, including negligence, breach of fiduciary duty and negligent supervision, require admissible evidence of a breach of the standard of care proximately resulting in damages. *Glaze*, 207 Ariz. at 29, ¶ 15.

#### 1.      Breach of Duty

**¶21**      Expert testimony is generally required "to establish the standard of care by which the professional actions of an attorney are measured and to determine whether the attorney deviated from the proper standard." *Baird v. Pace*, 156 Ariz. 418, 420 (App. 1987). Where, however, the attorney's negligence "is so grossly apparent that a lay person would

have no difficulty recognizing it," expert testimony is not required. *Asphalt Eng'rs, Inc. v. Galusha*, 160 Ariz. 134, 135-36 (App. 1989).

**¶22**        Brody alleged numerous instances in which Polsinelli purportedly failed to meet the standard of care in the bankruptcy court matter, specifically by not making an "equitable argument" regarding the application of *Entz-White* to the default interest issue, failing to disclose risks of continued litigation, not advocating strongly enough against the bankruptcy court's order instructing Brody to put money in an escrow account for possible subsequent attorneys' fees, and allegedly providing misleading fee estimates.

**¶23**        Polsinelli's alleged negligence is not apparent in the context of the underlying action. It would not be "grossly apparent" to a jury without expert testimony how and why Polsinelli should have prepared and argued certain motions, how precedent applied to bankruptcy issues, and how Polsinelli should have communicated with Brody regarding risks and calculations of adverse attorneys' fees awards considered in the context of an outstanding settlement offer. *Asphalt Eng'rs*, 160 Ariz. at 136. Expert testimony was necessary to establish the standard of care and whether Polsinelli failed to meet that standard. Further, the Preliminary Expert Affidavit failed to identify the standard of care that Brody contends Polsinelli breached.

**¶24**        All of the expert's opinions are contained in his Preliminary Expert Affidavit. At the expert's deposition, when asked to identify Polsinelli's purported representation errors, the expert testified that he "wasn't hired to . . . second-guess the tactical decisions." Regarding litigation strategy, the expert testified that while he would have taken a different approach, "this is not saying that [the Poslinelli lawyer] violated the standard by doing something else." Rather than explain specifically the "licensed professional's acts, errors or omissions that the expert considers to be a violation of the applicable standard of care," A.R.S. § 12-2602(B)(3), the expert testified, "I don't know" what Polsinelli failed to do in order to meet the standard of care. Brody has failed to offer any evidence regarding the appropriate standard of care. Accordingly, reasonable people could not agree with the conclusion that Polsinelli deviated from the applicable standard of care. Therefore, there is no triable issue of material fact and the superior court did not err in granting the motion for summary judgment.

### 2. Causation

¶25 The expert's causation opinion is also deficient pursuant to A.R.S. § 12-2602. Brody was required to present some evidence demonstrating that "but for the attorney's negligence, he would have been successful in the prosecution or defense of the original suit." *Glaze*, 207 Ariz. at 29, ¶ 12 (internal quotation and citation omitted). This is commonly called a "case within the case." *Frey v. Stoneman*, 150 Ariz. 106, 111 (1986). Absent specific evidence establishing causation, expert testimony is required "to substantiate the link between the claimed breach and the alleged injury." *Mann v. GTCR Golder Rauner, L.L.C.*, 351 B.R. 685, 703 (D. Ariz. 2006) (citations omitted); *see* A.R.S. § 12-2602(B)(4). The rationale behind this requirement "stems from the basic principle that a plaintiff has the burden of proving his or her injuries were caused by defendant's conduct." *Benkendorf v. Adv. Cardiac Specialists Chartered*, 228 Ariz. 528, 530, ¶ 9 (App. 2012) (discussing expert medical testimony establishing causation). Although causation is generally a question of fact for the jury to resolve, *see Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007), the court may resolve the issue if the evidence is insufficient to allow a jury to reasonably infer that "the negligent conduct on the part of the defendant was a proximate cause of plaintiff's injuries." *Ritchie v. Krasner*, 221 Ariz. 288, 298, ¶ 23 (App. 2009); *see Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 358 (1985) ("The question of proximate cause is usually for the jury and it is only when reasonable persons could not differ that the court may direct a verdict on the issue.").

¶26 Here, Brody's Preliminary Expert Affidavit contained no opinions about how Polsinelli's "acts, errors or omissions caused or contributed" to Brody's alleged damages. A.R.S. § 12-2602(B)(4). Moreover, the expert stated at his deposition, "I have an opinion [about causation], but . . . it's not an educated opinion, so I'm going to keep it to myself." Further, the expert explained that he only "[s]ort of" testified about causation, because ultimately he believed a judge "wouldn't let an expert opine" about causation.

¶27 Without "specific evidence establishing causation," expert testimony is necessary to prove causation in a legal malpractice action. *Mann*, 351 B.R. at 705. The effect of Polsinelli's acts on the subsequent litigation, appeal to the district court or the award of attorneys' fees is not "grossly apparent" and thus not likely to be understood by a jury without expert testimony. *See Asphalt Eng'rs*, 160 Ariz. at 136; *see also In re 1996 Nissan Sentra*, 201 Ariz. 114, 117, ¶ 6 (App. 2001) (unsworn assertions in a

memorandum are not facts to be considered when deciding a motion for summary judgment).

**¶28** Brody relies on inadmissible evidence to show Polsinelli caused his injuries; specifically, Brody cites email communications which allegedly show that, had Polsinelli provided sufficient information, Brody would have earlier settled the lawsuit with Geared. Polsinelli argues that those emails are not in the record. Regardless, emails are hearsay and therefore are not considered in deciding motions for summary judgment. *Cullison v. City of Peoria*, 120 Ariz. 165, 168 (1978) (hearsay is not competent evidence that creates a triable issue of fact to withstand summary judgment). Because the expert provided no admissible opinions on causation, the Preliminary Expert Affidavit is insufficient under A.R.S. § 12-2602 as a matter of law and does not serve to raise a triable issue. Accordingly, the superior court did not err.

### B. Superior Court Matter

**¶29** Brody argues that the superior court further erred in granting Polsinelli's motion for partial summary judgment in the superior court matter. We disagree.

**¶30** On May 9, 2014, Polsinelli filed a lawsuit in superior court against Jung on behalf of BFILP and contemporaneously filed a TRO application to enjoin Jung from selling the Clinton Property. Brody alleges that Polsinelli is liable for legal malpractice because Polsinelli did not timely record a *lis pendens*, which Brody further contends would have prevented Jung from selling the Clinton Property in violation of the TRO.

#### 1. Standing

**¶31** Polsinelli argues that Brody does not have standing to bring this action because BFILP claimed ownership interest in the Clinton Property, not Brody. To have standing, a plaintiff must have suffered "an injury in fact, economic or otherwise, caused by the complained-of conduct, and resulting in a distinct and palpable injury giving the plaintiff a personal stake in the controversy's outcome." *Karbal v. Ariz. Dep't of Revenue*, 215 Ariz. 114, 116, ¶ 7 (App. 2007) (citation omitted). Rule 17 requires that "[a]n action must be prosecuted in the name of the real party in interest."

**¶32** Brody is not the real party in interest and thus has no standing to appeal. Polsinelli filed a lawsuit against Jung on behalf of BFILP, not Brody. Moreover, it is undisputed that Appellants, in their individual capacities, never owned the Clinton Property. The record reflects Brody

conceded below that Appellants never claimed any personal ownership interest in the Clinton Property. Brody further conceded below that Brody "never claimed that he or his wife was personally injured by the sale of the Clinton Property and that the sole claimed injury was to Brody Family Investments, LP."

**¶33**     Appellants contend that Brody signed a fee agreement with Polsinelli on May 13, 2014 and therefore, "BFI is the Plaintiff in the lawsuit against Jung and his various entities, . . . but it is not the client." The fee agreement is not in the record. *See GM Dev. Corp. v. Cmty. Am. Mortg. Corp.*, 165 Ariz. 1, 4 (App. 1990) (on appeal, materials not in the record before the superior court will not be considered). Brody cites his deposition testimony, in which he affirms that the complaint was filed at his "direct[ion] . . . as the general partner" of the partnership. Even if Brody signed the client agreement as a BFILP partner, that alone does not make him the real party in interest. Section 29-1013 states, "[p]roperty acquired by a partnership is property of the partnership and not of the partners individually." Any injury that resulted from the sale of the Clinton Property in violation of the TRO was suffered by BFILP. Accordingly, Brody's argument is not supported by specific facts sufficient to raise a triable issue, and therefore the superior court did not err.

2.     Preliminary Expert Affidavit

**¶34**     The Preliminary Expert Affidavit also provides insufficient expert testimony on the standard of care in the superior court matter. In a legal malpractice action, unless the attorney's negligence is "so grossly apparent that a lay person would have no difficulty recognizing it," expert testimony is required. *Asphalt Eng'rs*, 160 Ariz. at 135-36. Expert testimony is required "to establish the standard of care by which the professional actions of an attorney are measured and to determine whether the attorney deviated from the proper standard." *Baird*, 156 Ariz. at 420. Here, while the expert's disclosed opinion was that it was below the standard of care for Polsinelli "not to follow Plaintiffs instructions," such disclosed opinion does not inform the trier of fact as to what a reasonably prudent lawyer would have done under the circumstances. Brody's expert testimony is insufficient. Accordingly, the superior court did not err in granting the motion for partial summary judgment in the superior court matter.

**CONCLUSION**

¶35        For the foregoing reasons, we affirm.[1]



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[1]        Mr. Brody filed a Notice of Appearance the day before oral argument and argued before the court.  Mr. Brody is a retired member of the Arizona State Bar.  Pursuant to Rule 32(c)(5) of the Arizona Rules of the Supreme Court, a lawyer on retired status cannot practice law in any jurisdiction, except to provide volunteer *pro bono* services under the supervision of a qualified legal services organization.  Accordingly, although Mr. Brody may enter an appearance on his own behalf, Mr. Brody may not appear as counsel on behalf of Mrs. Brody or any other party.  Therefore, to the extent Mr. Brody argued on behalf of Mrs. Brody or any others, Mr. Brody's Notice was improper and his argument possibly violated Arizona Rules of the Supreme Court 31 and 32.